780

[No. 33289-2-II. Division Two. August 11, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. DEVONN SHONTELLE
HOPKINS, *Appellant*.

782

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Jeremy R. Randolph, Prosecuting Attorney,* and *J. Andrew Toynbee, Deputy,* and *Robert M. McKenna, Attorney General,* and *Aileen B. Miller, Assistant,* for respondent.

¶1 BRIDGEWATER, J. — Devonn Shontelle Hopkins appeals her conviction of four counts of second degree child molestation and one count of second degree rape of a child. We affirm.

¶2 Devonn Hopkins, age 27, had several sexual encounters with 13-year-old K.R. These encounters began a few days after K.R.'s 13th birthday in April 2004, and included several instances in which Hopkins touched K.R.'s vaginal area with her fingers. The sexual behavior progressed until Hopkins performed oral sex on K.R.

¶3 Hopkins met Taylor Edmonds, K.R.'s older sister, in the military while they were both stationed in Korea. When they came back from Korea and were stationed at Fort Lewis, Edmonds introduced Hopkins to her family and Hopkins began spending significant time with them. She often stayed the night and would sleep on the floor in K.R.'s room. K.R. shared the room with her younger sister, E.R.

¶4 K.R.'s family members became suspicious about Hopkins's relationship with K.R. E.R. testified that on one occasion she heard Hopkins and K.R. kissing in her bedroom. E.R. confronted K.R. the next day, but K.R. denied that anything happened. E.R. eventually told Edmonds about this incident. Edmonds confronted both K.R. and Hopkins, but both denied kissing.

¶5 Edmonds's suspicions continued, however, and in June 2004, she looked in K.R.'s diary. There, K.R. wrote that she loved Hopkins and that she and Hopkins had kissed. Edmonds took the diary to their mother, Jody Kephart. Kephart called the police and Hopkins's commanding officer, Captain Rhonda Jones, at Fort Lewis.

¶6 Lewis County Sheriff's Deputy Stacy Brown interviewed Kephart and K.R. K.R. initially denied the relationship because she did not want to get Hopkins in trouble but eventually related the specific details about the sexual encounters. Deputy Brown referred K.R. to the sexual assault clinic at Providence St. Peter Hospital in Olympia.

¶7 Nancy Young, a nurse practitioner, examined K.R. and produced a report. Young had a family emergency, however, and did not testify at trial. Dr. Deborah Hall, her supervisor, testified instead, relating the contents of Young's report to the jury. In the report, Young documented that K.R. admitted that Hopkins had performed oral sex on her. Dr. Hall then testified that the physical exam was normal but consistent with the reported sexual activity.

¶8 Meanwhile, Captain Jones called Hopkins into her office and read Hopkins her *Miranda*[1] warnings from a preprinted card. Hopkins agreed to talk to Captain Jones, and Jones then told Hopkins about Kephart's allegations. Hopkins denied impropriety, but Captain Jones ordered Hopkins to have no contact with the family.

¶9 Shortly afterward, Agent Laurinda Acosta from the military's Criminal Investigation Division interviewed Hopkins. Acosta advised Hopkins that she was under investigation and then read Hopkins her *Miranda* warnings. Hopkins acknowledged her rights and agreed to talk. Hopkins initially denied any improper behavior but then confessed. Hopkins then wrote and signed a confession detailing several sexual encounters. The jury convicted Hopkins of four counts of second degree child molestation and one count of second degree rape of a child.

## I. Confession

¶10 Hopkins argues that the *Miranda* warnings Jones and Acosta read to her were constitutionally defective because they explained that Hopkins had a right to a

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

military lawyer at no expense rather than a civilian public defender. Her argument fails.

 ¶11 We review the adequacy of *Miranda* warnings de novo. *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). There is no requirement that the warnings follow the exact language of *Miranda*. *State v. Brown*, 132 Wn.2d 529, 582, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). But in order to be a valid warning, the wording cannot be affirmatively misleading. *San Juan-Cruz*, 314 F.3d at 387. We determine whether the warnings reasonably and effectively conveyed a suspect's rights, one of which is the right to have a counsel appointed if a suspect is unable to afford one. *Brown*, 132 Wn.2d at 582; *Miranda*, 384 U.S. at 473.

¶12 Here, the military *Miranda* form Acosta used read:

"I have the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with me during questioning. This lawyer can be a civilian lawyer I arrange for at no expense to the Government or a military lawyer detailed for me at no expense to me, or both."

Appellant's Suppl. Clerk's Papers (ASCP) (Nov. 3, 2005) at 6. Acosta testified that she read this warning and had Hopkins read and initial it. Hopkins acknowledged that she understood her rights by signing the waiver and agreed to speak to Acosta.

 ¶13 Hopkins now argues that this warning was misleading because it does not say that she had a right to a public civilian attorney and because it did not explain the difference between a military lawyer and a civilian lawyer. But Hopkins cites no authority that *Miranda* requires a civilian attorney. Neither the rationale nor the language of *Miranda* suggests that an appointed attorney must be a civilian. The *Miranda* Court reasoned that the presence of an attorney was needed to negate the coercive atmosphere of an interrogation. *Miranda*, 384 U.S. at 466. A military attorney is as suited to that goal as a civilian one.

¶14 The warnings Acosta used clearly conveyed that Hopkins had the right to consult an attorney. Moreover, though Hopkins argues that a military attorney may not have the same confidentiality requirements, the warning stressed that the conversation with the attorney would be private. Accordingly, the warnings reasonably conveyed Hopkins's rights.

¶15 Two additional factors weigh against her position. First, the rules expressed in *Miranda* govern criminal interrogations by military authorities. *United States v. Tempia*, 16 C.M.A. 629, 635, 37 C.M.R. 249 (1967). *Tempia* specifically required that if the accused is *"indigent a lawyer will be appointed to represent him." Tempia*, 16 C.M.A. at 637. In explicitly addressing Hopkins's claim that a military lawyer may not have the same loyalty and confidentiality requirements, we turn to *Tempia* where the court stated that an accused is entitled to a lawyer

> who is peculiarly and entirely the accused's own representative; who owes him total fidelity; to whom full disclosure may be safely made in a privileged atmosphere; . . . a legal advisor of his own—not one . . . who cannot protect the accused with the attorney-client privilege.

*Tempia*, 16 C.M.A. at 639-40. Thus, as the military court in *Tempia* noted, the same duty binds a military lawyer as binds a civilian attorney.

¶16 Second, the form Acosta used specifically informed Hopkins that the appointed military lawyer would be "detailed *for me.*" ASCP (Nov. 3, 2005) at 6 (emphasis added). Therefore, she was told explicitly that the military lawyer's duty would be to her, not the military.

¶17 We also note that the Georgia Supreme Court has addressed this version of warnings and held that an appointed military attorney satisfies *Miranda*'s requirement for the presence of an attorney. *Burger v. State*, 242 Ga. 28, 247 S.E.2d 834, 837 (1978). The Georgia court reasoned that so long as the accused is informed of the right to an appointed counsel, *Miranda* is satisfied. *Burger*, 247 S.E.2d at 837.

¶18 There is compelling evidence in this case that Hopkins was aware of and understood her *Miranda* rights. The trial court determined that Jones and Acosta informed Hopkins of her constitutional rights. The court also found that Hopkins heard her constitutional rights, reread the warnings herself, and understood her rights. The court then found that Hopkins voluntarily waived her rights and gave a statement. These findings are supported by Jones's and Acosta's testimony that they did not coerce Hopkins, that each advised Hopkins of her rights, and that Hopkins willingly participated after reading and initialing her rights. There was no error.

¶19 Case law does not support Hopkins's assertions that she needed to understand the difference between a civilian and a military attorney, and that the rights form was inaccurate and misleading. And even though we address her assertions, her claims are naked castings into the constitutional sea and are not sufficient to command judicial consideration and discussion. *In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986); *State v. Johnson,* 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

## II. Dr. Hall's Testimony

¶20 Hopkins next asserts that the trial court erred in allowing Dr. Hall to testify about Nancy Young's examination of K.R. She argues that Dr. Hall's testimony constituted impermissible hearsay because K.R.'s statements regarding her abuser's identity were not reasonably related to a medical diagnosis and did not fit under ER 803(a)(4)'s exception to the hearsay rule. She also maintains that Young's report, on which Dr. Hall relied, was not a business record and was also inadmissible hearsay because Young did not testify. In addition to raising hearsay objections, Hopkins urges us to find that both K.R.'s statements and Young's report are testimonial hearsay statements and that their admission violates her confrontation rights under *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

■■ ¶21 Hearsay is not admissible unless it fits under a recognized exception to the hearsay rule. ER 802. And here, Dr. Hall's testimony is double hearsay. K.R.'s statements to Young are the first level of hearsay, and Young's report itself is the second level of hearsay. In instances of multiple hearsay, each level of hearsay must be independently admissible. ER 805; *State v. Rice*, 120 Wn.2d 549, 564, 844 P.2d 416 (1993).

¶22 Hopkins argues that K.R.'s statements identifying Hopkins as the abuser are inadmissible hearsay. The State argues that K.R.'s statements to Young are admissible under ER 803(a)(4) as statements for the purposes of medical diagnosis. The State's position is correct.

■ ¶23 Normally, statements to medical providers identifying the perpetrator of a crime are not admissible under the medical diagnosis or treatment exception. *State v. Ashcraft*, 71 Wn. App. 444, 456, 859 P.2d 60 (1993). Where the declarant is a child, however, Washington courts have determined that statements regarding the identity of the abuser are reasonably necessary to the child's medical treatment. *Ashcraft*, 71 Wn. App. at 456-57 (citing *State v. Butler*, 53 Wn. App. 214, 222-23, 766 P.2d 505 (1989)). The rationale is that a medical provider needs to know who abused a child in order to avoid sending the child back to the abusive relationship and to treat the child's psychological injury. *Butler*, 53 Wn. App. at 221-22 (citing *United States v. Renville*, 779 F.2d 430, 438 (8th Cir. 1985)).

¶24 Therefore, Young, in examining K.R., reasonably needed to know the abuser's identity in order to properly treat K.R. Hopkins asserts that because the police referred K.R. to the clinic, Young already knew that Hopkins was the suspect. But K.R. may have lied to police about the abuser's identity, and, therefore, Young's questioning was still necessary for K.R.'s medical treatment. That the information she elicited happened to confirm K.R.'s statement to the police does not change the basic medical purpose in determining the abuser's identity. Thus, the State is correct

that K.R.'s statements to Young are admissible under ER 803(a)(4).

■ ¶25 Even if K.R.'s statements to Young were admissible, Hopkins argues that they were testimonial hearsay and should have been excluded under *Crawford*. But "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9. Because K.R. testified, this argument has no merit; Hopkins could have cross-examined K.R. about her statement to Young. We, therefore, do not address whether K.R.'s statements to Young were testimonial.

■ ¶26 Hopkins next argues that Young's report is inadmissible hearsay. The State argues that Young's report is admissible under the business records exception to the hearsay rule. To be admissible under the business records exception, the business record must (1) be in record form; (2) be of an act, condition, or event; (3) be made in the regular course of business; (4) be made at or near the time of the fact, condition, or event; and (5) satisfy the court that the sources of information, method, and time of preparation justify admitting the evidence. RCW 5.45.020; *State v. Ziegler*, 114 Wn.2d 533, 538, 789 P.2d 79 (1990).

■ ¶27 But Hopkins correctly points out that the State failed to establish the necessary prerequisites for the business record exception. Dr. Hall did not testify how reports were made or whether they were produced in the regular course of business. While the State is undoubtedly correct that medical records can be admitted under the business records exception, the State is not excused from laying the appropriate foundation.

■ ¶28 Moreover, as Hopkins notes, Young's methodology of gathering K.R.'s medical history is potentially very significant. It may be that Hopkins could establish in cross-examination that Young may have used a suggestive interview method. Accordingly, without Young's testimony to establish the reliability of the information gathered

in the interview, the business records exception is not applicable. Where the preparation of a report requires the exercise of the declarant's skill and discretion, the business record exception does not apply. *In re Welfare of J.M.*, 130 Wn. App. 912, 924, 125 P.3d 245 (2005). Here, Young's interview required her skill and discretion. Therefore, the trial court erred in admitting Young's report at least with regard to K.R.'s statements about the abuse and the identity of the abuser.

¶29 Even if the State had established the proper foundation for the business records exception, this report constituted testimonial hearsay and therefore was inadmissible under *Crawford*.

¶30 The Sixth Amendment prohibits the admission of testimonial hearsay statements in a criminal case without an opportunity for cross-examination. *Crawford*, 541 U.S. at 50-51. There are three prerequisites before *Crawford* applies. First, the statements must be offered for the truth of the matter asserted, i.e., for a hearsay purpose. *In re Pers. Restraint of Theders*, 130 Wn. App. 422, 432-33, 123 P.3d 489 (2005); *Crawford*, 541 U.S. at 50-51 (noting that the Sixth Amendment applies to hearsay statements admitted in court). Second, the statements must be testimonial. And third, the defendant must not have had an opportunity to cross-examine the declarant.

¶31 Because Young's report is hearsay and Young did not testify, this issue turns on whether the statements were testimonial. The *Crawford* Court declined to define "testimonial statements" but did identify three examples of statements that are testimonial: (1) ex parte in-court testimony or its functional equivalent, i.e., affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that a declarant would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness

reasonably to believe that the statements would be available for use at a later trial. *Crawford*, 541 U.S. at 51-52.

¶32 Here, Young created her report under circumstances that would lead an objective witness to believe that the statements would be available for use at a later trial. Under RCW 26.44.030(1)(a), medical providers are required to file reports with the proper law enforcement agencies where they have reasonable cause to believe that a child has suffered abuse or neglect. And in this case, law enforcement agencies referred K.R. to Young for investigation of sexual abuse so that Young knew that there was an ongoing legal investigation. Moreover, in this case, Young forwarded her report to Deputy Brown in Lewis County with a form cover letter noting that

> Copies [of the report] also may have been mailed to other agencies involved, such as law enforcement, Child Protective Services, family physician, guardian ad litem, or attorney. . . .
>
> A patient may have video-colposcopic film on file, which can be reproduced if those findings are pertinent to legal proceedings. *If the patient was interviewed as part of their medical care and made a disclosure about an abuse, an audiotape will be on file and can be provided upon request.*

ASCP (Nov. 3, 2005) at 1. As this letter indicates, Young was aware that her report was relevant to the ongoing legal investigation and could be used prosecutorially, falling under at least one *Crawford* definition. *Crawford*, 541 U.S. at 52. The form even offers to provide additional information for legal proceedings. Under these circumstances, an objective witness would reasonably believe that her statement would be available for use at a later trial.

¶33 Young's report was the functional equivalent of testimony and therefore testimonial. Young intended her report to be a formal statement for use in court. The trial court therefore erred in allowing Dr. Hall to relate Young's report to the jury in violation of Hopkins's confrontation rights. Hopkins should have had the opportunity to cross-examine Young about the report.

¶34 But the error was harmless. When an error, such as improperly admitted hearsay evidence, deprives the defendant of the right to confrontation, the State must show that the error was harmless beyond a reasonable doubt. *State v. Powell*, 126 Wn.2d 244, 267, 893 P.2d 615 (1995). An error is harmless beyond a reasonable doubt if untainted evidence properly admitted at trial was so overwhelming that it necessarily leads to a finding of guilt. *State v. Thompson*, 151 Wn.2d 793, 808, 92 P.3d 228 (2004).

¶35 Here, excluding Dr. Hall's testimony, there is overwhelming evidence of guilt to support these convictions. K.R. testified at length about the sexual contacts between Hopkins and herself. Hopkins wrote a detailed confession admitting to several instances of inappropriate sexual contact, including oral sex. K.R.'s younger sister testified that she overheard Hopkins and K.R. kissing on one occasion. And K.R. wrote in her journal that she and Hopkins were in love and had kissed. These facts present overwhelming evidence of Hopkins's guilt. Dr. Hall's testimony added little because the physical exam found no evidence of sexual activity and because K.R. told the jury directly about her relationship with Hopkins, making Hall's testimony duplicative. Therefore, any error in admitting Dr. Hall's testimony was harmless beyond a reasonable doubt.

¶36 Affirmed.

HOUGHTON and PENOYAR, JJ., concur.

Review denied at 160 Wn.2d 1020 (2007).