[No. 37533-8-II.   Division Two.   April 13, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRY FLEMING III, *Appellant*.

---

*Roger A. Hunko* and *Tina Robinson* (of *The Law Office of Wecker Hunko & Bougher*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Jennine E. Christensen, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — A jury entered a verdict finding Harry Fleming III guilty of theft of rental, leased, or lease-purchased property, contrary to former RCW 9A.56-.096 (2003). Fleming appeals his conviction, arguing that the trial court erred by admitting unreliable hearsay evidence under the business record exception rule, by admitting hearsay evidence in violation of his Sixth Amendment confrontation rights, and by giving a "presumption of intent to deprive" jury instruction. Fleming also argues that sufficient evidence does not support his conviction. Al-

though sufficient evidence supports the jury's verdict, the State did not present any evidence that Fleming received the written notice former RCW 9A.56.096 requires from which the jury could presume his intent to deprive, and the trial court erred in giving the challenged jury instruction. Accordingly, we reverse but remand for a new trial.

## FACTS

BACKGROUND FACTS

¶2 Quality Rentals is a rent-to-own furniture company in Bremerton, Washington. On May 17, 2006, Fleming signed a rental lease with Quality Rentals for a three-piece wall unit. As part of a sales promotion, Fleming paid $10 to take the entertainment system home. Fleming did not make any additional payments for the wall unit.

¶3 Beginning on May 27, 2006, Quality Rentals attempted to contact Fleming by telephone regarding his payment status. Quality Rentals was unable to contact Fleming because there was no answer when they called or because the person answering the phone would hang up; Quality Rentals did not leave any phone messages.

¶4 On May 30, 2006, Fleming returned to Quality Rentals and signed a lease for a sectional couch. He paid $10 to take the couch home, but he failed to make any additional payments. On June 7, 2006, a Quality Rentals employee went to Fleming's residence and left a "final notice" on his door indicating that his payments were past due and demanding that he return the rented property. Report of Proceedings (RP) (Feb. 20, 2008) at 82. Quality Rentals again left final notices on Fleming's door on June 12, June 21, June 22, and June 28.

¶5 On June 12, 2006, Quality Rentals also sent Fleming demand letters that stated his payments were past due. The demand letters informed Fleming that the State might criminally prosecute him if he failed to return the rented property within 72 hours of receiving notice. Quality Rentals sent the demand letters through certified mail. After

unsuccessful attempts to deliver the demand letters on June 13 and June 20, the post office returned the unclaimed letters to Quality Rentals on June 29, 2006.

PROCEDURAL FACTS

¶6 On July 31, 2007, the State charged Fleming with theft of rental, leased, or lease-purchased property. On February 19, 2008, the trial court held a hearing on the parties' pretrial motions. Fleming objected to several documents that he anticipated the State would attempt to offer under the business records exception rule, including computer printouts of customer contact notes, and an envelope purportedly containing demand letters. Fleming asserted that the trial court could not admit those documents under the business record exception to the hearsay rule because the documents did not meet foundational requirements of RCW 5.45.020.[1]

¶7 Fleming argued that because Quality Rentals had fired Tammie Hale, the employee who purportedly generated the documents at issue, and she was unavailable as a witness, the trial court could not determine whether the documents were reliable. The State responded that Fleming's contentions regarding the documents went to weight of the evidence and not to their admissibility. The trial court held an ER 104[2] hearing prior to jury selection on February 20, 2008.

---

[1] RCW 5.45.020 states:

A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

[2] ER 104 states:

(a) **Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of section (b). In making its determination it is not bound by the Rules of Evidence except those with respect to privileges.

(b) **Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it

¶8 At the ER 104 hearing, Quality Rentals manager Todd Caspary testified that exhibit 5 contained a history of every point of contact with Fleming. Caspary stated that Quality Rentals trains every employee to make entries in the computer system documenting customer contacts soon after the employee takes any action concerning a customer and that the computer time stamps each entry after the employee enters it into the system. Caspary also stated that exhibit 5 was not a complete record of each transaction because the computer can print out only a limited number of characters. Caspary testified that Hale had made some of the entries in Fleming's customer contacts document. Caspary admitted that he later fired Hale because of "anomalies" in her record keeping.

¶9 Caspary testified that Quality Rentals processed two demand letters on June 8, 2006. Caspary stated that the demand letters were prepared in the regular course of business. Caspary identified exhibit 8 as an envelope with a return receipt, stating that, although Quality Rentals mailed it to Fleming on June 8, 2006, the post office did not appear to process it until June 13, 2006. Caspary stated that the "[g]eneral process is the day I print the letter, I seal it in the envelope, . . . take it to the post office and send it certified." RP (Feb. 20, 2008) at 23. Caspary stated that he did not personally process these demand letters or mail them but he believed that Hale did. Upon noting the postmark on the envelope as June 12, 2006, Caspary testified that although a demand letter is printed on a particular day and the computer would show that as

---

upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

(c) **Hearing of Jury.** Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require or, when an accused is a witness and so requests.

(d) **Testimony by Accused.** The accused does not, by testifying upon a preliminary matter, become subject to cross examination as to other issues in the case.

(e) **Weight and Credibility.** This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

the day it was sent, an employee might not mail it that day. Caspary stated that there might not be enough petty cash or there might be another reason that an employee did not mail a demand letter the same day it was processed.

¶10 The trial court admitted the customer contact document and the envelope, and reserved its ruling on the demand letters. Regarding its ruling on the customer contact document, the trial court stated:

> [The customer contact notes are] clearly a routine business record kept by this business, and it's clerical in nature, documenting events that happened in the business. The argument that it's not complete or not accurate I think again is going to the weight, not the admissibility, because this is what their computer is set up to do and it did what the computer is set up to do. Whether it's X amount of letters that the computer can print—or I guess that's what it is, it cuts off at some point—it is what it is, and it's a business record, so the motion . . . is denied to suppress the customer contact notes history.

RP (Feb. 20, 2008) at 33-34.

¶11 When the State introduced the demand letters at trial, Fleming renewed his objection to their admission under the business record exception. Fleming also argued that the demand letters were not relevant because the post office returned the certified letter to Quality Rentals and the parties did not open the sealed envelope until trial began. The trial court admitted the demand letters over Fleming's objection, stating that whether Fleming received the letters was an issue of fact for the jury. Fleming also objected to a number of other documents that the court admitted under the business record exception to the hearsay rule.

¶12 The State proposed jury instruction 11, a "presumption of intent to deprive" instruction. Jury instruction 11 stated:

> The finder of fact may presume intent to deprive if the finder of fact finds that the person who rented or leased the property failed to return or make arrangements acceptable to the owner

of the property or the owner's agent to return the property to the owner or the owner's agent within seventy-two hours after receipt of proper notice following the due date of the rental, lease, lease-purchase, or loan agreement.

Proper notice consists of a written demand by the owner or the owner's agent made after the due date of the rental, lease, lease-purchase, or loan period, mailed by certified or registered mail to the renter, lessee, or borrower at the address the renter, lessee, or borrower gave when the contract was made.

Clerk's Papers at 72.

¶13 Fleming argued that the theft of rental property statute, former RCW 9A.56.096, allows the jury to presume an intent to deprive only upon a showing that the defendant received the proper notice. Fleming did not contend that Quality Rentals failed to send proper notice, but he instead argued that there was no showing that he actually received the notice because the post office returned the demand letters to Quality Rentals unclaimed. The trial court gave jury instruction 11 over Fleming's objection.

¶14 The jury entered a verdict finding Fleming guilty of theft of rental property. Fleming timely appeals his conviction.

## ANALYSIS

### BUSINESS RECORD EXCEPTION

¶15 Fleming first contends that the trial court erred by admitting documents into evidence under the business record exception to the hearsay rule.[3] Fleming specifically contends that the admitted documents were unreliable because Quality Rentals fired the employee that created the documents due to "anomalies" in her record keeping. The

---

[3] Fleming asserts that the trial court erred by admitting exhibits 2 through 11. But Fleming did not object to exhibit 2's admission. Accordingly, Fleming cannot challenge the trial court's admission of exhibit 2 on appeal. "A party cannot appeal a ruling admitting evidence unless the party makes a timely and specific objection to the admission of the evidence." *State v. Avendano-Lopez*, 79 Wn. App. 706, 710, 904 P.2d 324 (1995), *review denied*, 129 Wn.2d 1007 (1996).

State counters that the trial court did not err by admitting the business records because Quality Rentals manager Caspary provided the proper foundation for the trial court to admit the documents. We agree with the State.

¶16 The Uniform Business Records as Evidence Act (UBRA), ch. 5.45 RCW, makes evidence that would otherwise be hearsay competent testimony. *State v. Ziegler*, 114 Wn.2d 533, 537, 789 P.2d 79 (1990). To be admissible under the business records exception, (1) the business record must be in record form; (2) be of an act, condition, or event; (3) be made in the regular course of business; (4) be made at or near the time of the fact, condition, or event; and (5) the court must be satisfied that the sources of information, method, and time of preparation justify admitting the evidence. *Ziegler*, 114 Wn.2d at 538. We will not reverse a trial court's decision to admit evidence under the business records exception unless there has been a manifest abuse of discretion. *Ziegler*, 114 Wn.2d at 538; *State v. Alexander*, 64 Wn. App. 147, 156, 822 P.2d 1250 (1992).

¶17 Under UBRA, business records are presumptively reliable if made in the regular course of business and there was no apparent motive to falsify. *Ziegler*, 114 Wn.2d at 538 (citing *State v. Rutherford*, 66 Wn.2d 851, 405 P.2d 719 (1965)). The trial court is not required to examine the person who actually made a record to admit the record under the business record exception. *State v. Iverson*, 126 Wn. App. 329, 337-38, 108 P.3d 799 (2005) (citing *Cantrill v. Am. Mail Line, Ltd.*, 42 Wn.2d 590, 607-08, 257 P.2d 179 (1953)). Rather, testimony by one who has custody of the record as a regular part of his work or who has supervision of its creation will be sufficient to introduce the record. *Iverson*, 126 Wn. App. at 338 (citing *Cantrill*, 42 Wn.2d at 608).

¶18 Here, Quality Rentals manager Caspary testified that he had worked for Quality Rentals for 16 years, that he was a Quality Rentals store manager since 2001, and that he was the store manager between May 17, 2006, and July 6, 2006. Caspary also described how Quality Rentals con-

ducted its business from the initiation of a customer contact, through the ordering process, to collection procedures. Caspary testified that he was familiar with all of Quality Rentals' business documents and that, as the store manager, he was responsible for training employees on the use of those documents.

¶19 Fleming contends that Caspary's testimony did not provide adequate foundation for admitting the documents under the business records exception because he did not establish that the documents were "made at or near the time of the act, condition or event" or that "the sources of information, method, and time of preparation justif[ied] the admittance of the evidence." *See Ziegler*, 114 Wn.2d at 538. Fleming asserts that Caspary's testimony did not meet these requirements because Hale, who Quality Rentals fired for "anomalies" in her record keeping, prepared the documents.

¶20 No Washington case has squarely addressed whether a trial court errs by admitting evidence under the business record exception where there are questions regarding the records' accuracy. Other states applying the business record exception have found that questions regarding the accuracy of business records go to the weight of the evidence rather than its admissibility. *See, e.g.*, *State v. Marston*, 2000-0589 (La. 3/16/01); 780 So. 2d 1058, 1064 (possibility that business record was not inherently trustworthy because teller did not follow routine banking procedure went to the weight of the evidence, not its admissibility); *People v. Montroy*, 225 A.D.2d 913, 914, 639 N.Y.S.2d 522 (1996) ("defendant's contention concerning the witnesses' limited understanding of the record-keeping practices of their employer merely goes to the weight of the evidence sought to be admitted and not to its admissibility"); *Graham v. State*, 547 S.W.2d 531, 538 (Tenn. 1977) (Generally, business records are admissible when introduced in the proper manner and with the proper foundation, and questions regarding the qualifications of the individual preparing the record go to weight and not admissibility.). Although no Washington case has addressed

this issue directly, Division One of this court has stated, albeit in dicta, that "[w]here actual error is suspected the challenge should be to the accuracy of the business record, not to its admissibility." *State v. Ben-Neth*, 34 Wn. App. 600, 602 n.2, 663 P.2d 156 (1983).

¶21 The reasoning of Division One and of other state courts is persuasive. The trial court properly determined that Fleming's contentions regarding "anomalies" in Hale's record keeping went to the weight of the evidence, not its admissibility. Accordingly, the trial court did not err in admitting exhibits 3 through 11 under RCW 5.45.020.

SIXTH AMENDMENT RIGHT TO CONFRONTATION

■ ¶22 Next, Fleming asserts that the admission of a quote sheet, which indicated the replacement value of the rented property, violated his Sixth Amendment confrontation right. As an initial matter, Fleming did not object to the admission of the quote sheet on this ground. Rather, at trial he argued only that the State did not present an adequate foundation for the trial court to admit the document. Thus, Fleming did not properly preserve this challenge for appeal. *See* ER 103(a); *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial."), *cert. denied*, 475 U.S. 1020 (1986).

■ ¶23 The Sixth Amendment confrontation clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Sixth Amendment confrontation clause prohibits the admission of *testimonial* hearsay statements in a criminal case without an opportunity for cross-examination. *State v. Hopkins*, 134 Wn. App. 780, 790, 142 P.3d 1104 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 50-51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)), *review denied*, 160 Wn.2d 1020 (2007). A confrontation clause violation does not occur unless the admitted hearsay evidence was "testimonial" and the accused did not

have a prior opportunity to cross-examine the unavailable declarant. *State v. Kirkpatrick*, 160 Wn.2d 873, 882, 161 P.3d 990 (2007) (citing *Crawford*, 541 U.S. at 53-54, 68). We may address for the first time on appeal a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Kronich*, 160 Wn.2d 893, 900-02, 161 P.3d 982 (2007). We review alleged confrontation clause violations de novo. *Kronich*, 160 Wn.2d at 901.

¶24 Fleming asserts that the quote sheet was "testimonial" hearsay because Quality Rentals began creating "quote sheets" at the request of the prosecutor's office. To support his argument that the quote sheet was testimonial hearsay, Fleming cites *Hopkins*, 134 Wn. App. 780. In *Hopkins*, this court held that "[e]ven if the State had established the proper foundation for the business records exception, [a nurse's medical report] constituted testimonial hearsay and therefore was inadmissible under *Crawford*." 134 Wn. App. at 790. This court held that the nurse's medical report was inadmissible because she "created her report under circumstances that would lead an objective witness to believe that the statements would be available for use at a later trial." *Hopkins*, 134 Wn. App. at 791.

¶25 The evidence here is distinguishable from the nurse's report found inadmissible in *Hopkins*, and we hold that it is not testimonial hearsay. Thus, its admission did not violate Fleming's right to confrontation. First, unlike in *Hopkins*, Caspary laid the proper foundation for admitting the quote sheet under the business records exception. And our Supreme Court has suggested that under *Crawford*, business records are generally not testimonial hearsay. *See, e.g., Kirkpatrick*, 160 Wn.2d at 882 ("The Supreme Court has not provided a comprehensive definition of 'testimonial.' However, the Court did state in *Crawford* that business records are 'by their nature . . . not testimonial.'" (alteration in original) (citation omitted) (quoting *Crawford*, 541 U.S. at 56)); *Kronich*, 160 Wn.2d at 901-02. Second, unlike the nurse in *Hopkins*, Hale did not

compile the quote sheet at the behest of law enforcement officials. Instead, Hale completed the quote sheet in the normal course of her duties as a Quality Rentals employee. The fact that Quality Rentals began generating quote sheets at the request of the prosecutor's office does not render them testimonial in nature. *See Kirkpatrick*, 160 Wn.2d at 885 (although "prepared for purposes of litigation and . . . intended to be relied upon by the State," license status summaries are not testimonial). Last, requiring cross-examination of Hale would not advance the truth-seeking process protected by the Sixth Amendment right to confrontation. *Kirkpatrick*, 160 Wn.2d at 887-88. Here, Caspary testified that Quality Rentals employees fill out quote sheets by simply listing the prices of items from the store's inventory price list. Because the quote sheet was not testimonial in nature, the trial court did not violate Fleming's Sixth Amendment right to confrontation when it admitted the document into evidence.

JURY INSTRUCTION 11

¶26 Next, Fleming asserts that the trial court erred by giving a "presumption of intent to deprive" jury instruction. Specifically, Fleming argues that former RCW 9A.56.096(2)(a) allows the jury to presume an intent to deprive only upon a showing that the defendant *received* the proper notice. We agree. Because the plain language of former RCW 9A.56.096(2)(a) requires proof that the defendant received proper notice before a trial court may give a presumption of intent to deprive jury instruction, and because the State failed to provide any evidence that Fleming received the statutory written certified notice, the trial court erred in giving the challenged jury instruction. Accordingly, we reverse Fleming's conviction.

¶27 In general, we review a trial court's choice of jury instructions for an abuse of discretion. *State v. Douglas*, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005). But we review an alleged error of law in jury instructions de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). Jury

instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and, when read as a whole, properly inform the jury of the applicable law. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). A trial court commits prejudicial error by submitting an issue to the jury not warranted by the evidence. *Clausing*, 147 Wn.2d at 627.

¶28 Former RCW 9A.56.096 provides:

(1) A person who, with intent to deprive the owner or owner's agent, wrongfully obtains, or exerts unauthorized control over, or by color or aid of deception gains control of personal property that is rented or leased to the person, is guilty of theft of rental, leased or lease-purchased property.

(2) The finder of fact may presume intent to deprive if the finder of fact finds . . . the following:

(a) That the person who rented or leased the property failed to return or make arrangements acceptable to the owner of the property or the owner's agent to return the property to the owner or the owner's agent within seventy-two hours *after receipt of proper notice* following the due date of the rental, lease, or lease-purchase agreement . . . .

. . . .

(3) As used in subsection (2) of this section, *"proper notice" consists of a written demand* by the owner or the owner's agent made after the due date of the rental, lease or lease-purchase period, *mailed by certified or registered mail to the renter* or lessee at: (a) The address the renter or lessee gave when the contract was made; or (b) the renter or lessee's last known address if later furnished in writing by the renter or lessee, or the agent of the renter or lessee.

(Emphasis added.)

¶29 We review statutory construction de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Our primary duty in interpreting statutes is to determine and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. *Wentz*, 149 Wn.2d at 346.

¶30 Here, former RCW 9A.56.096(2)'s plain language requires that a defendant actually receive the statutorily defined proper notice before a jury can be instructed that it may presume his intent to deprive. Although the State provided evidence that Quality Rentals sent proper notice, because the certified letter was returned unclaimed, it failed to prove Fleming received the notice, which is a condition precedent to giving an instruction allowing, but not requiring, the jury to presume his unlawful intent. As in burglary cases where the State is required to provide evidence of an unlawful entry before a jury may be instructed that it may infer criminal intent from the unlawful entry, former RCW 9A.56.096(2) requires the State to prove that a defendant received proper notice before a jury may be instructed that it may presume his intent to deprive. *See* RCW 9A.52.040; *see, e.g., State v. Brunson*, 128 Wn.2d 98, 111, 905 P.2d 346 (1995) (State must present sufficient evidence that a defendant had unlawfully entered the building before a trial court may give a permissive inference of criminal intent jury instruction).

¶31 By compounding an inference of receipt with an instruction allowing an inference of intent to deprive, the State's burden to prove that Fleming intended to deprive Quality Rentals of its property was reduced. Further, the error was not harmless beyond a reasonable doubt because the untainted evidence is not so overwhelming that it "necessarily leads to a finding of guilt." *Guloy*, 104 Wn.2d at 426. Although the State presented evidence that Quality Rentals notified Fleming of his delinquent payments by phone and by leaving written notices or "tags" on his door sufficient for a jury to infer that Fleming had notice and intended to deprive Quality Rentals of its property, the absence of evidence of actual receipt of statutorily defined "proper notice" precluded the trial court from instructing the jury that from the fact of receipt, it may infer the requisite criminal intent.

SUFFICIENCY OF THE EVIDENCE

¶32 Last, Fleming asserts that sufficient evidence did not support the intent element of his theft of rental property conviction. But there was ample evidence that Fleming intended to deprive Quality Rentals of its property, there was just no direct evidence that Fleming received the written "proper notice" that was required before the jury could be instructed that it could presume his criminal intent. Former RCW 9A.56.096.

¶33 Sufficiency of the evidence is a question of constitutional magnitude that the defendant may raise for the first time on appeal. *State v. Alvarez*, 128 Wn.2d 1, 13, 904 P.2d 754 (1995). In determining whether sufficient evidence supports a conviction, "[t]he standard of review is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

¶34 A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable for purposes of drawing inferences. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997) (citing *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992)). In other words, credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶35 Here, the evidence at trial established that Quality Rentals made numerous attempts to contact Fleming by phone and by leaving written notices on the door of his

residence. Telephonic and posted notices would be sufficient evidence of knowledge of wrongfully retaining property but would not satisfy former RCW 9A.56.096's "proper notice" requirement, which must be in writing and mailed by certified or registered mail. Any rational trier of fact could infer from Fleming's failure to make any payments or to respond to Quality Rentals' attempts to contact him regarding these payments that he intended to deprive it of the rented property. We hold only that because the State did not present any direct evidence that Fleming received written "proper notice" by certified or registered mail as former RCW 9A.56.096(3) requires, it was error to instruct the jury that it may presume his intent to deprive from a failure to return the property within 72 hours of an unproven event. Accordingly, we reverse and remand for a new trial.

VAN DEREN, C.J., and HOUGHTON, J., concur.