# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50930-0-II |
| Respondent, | |
| v. | |
| VICTOR BUENO, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — A jury convicted Victor Bueno of violating a court order by sending a letter to his ex-wife, Mardi Jo Harris. Bueno appeals his conviction, arguing that the trial court erred by admitting the letter itself into evidence because it was hearsay and that insufficient evidence supports his conviction because he is unable to read or write in English. Bueno makes additional arguments in a statement of additional grounds (SAG). We affirm.

## FACTS

Bueno and Harris divorced in 2016 after 15 years of marriage. In November 2015, the Bremerton Municipal Court issued a domestic violence no-contact order prohibiting Bueno from contacting Harris through November 2017.

On March 30, 2017, Harris received a letter she believed to be from Bueno. She immediately called the Bremerton police and reported Bueno's violation of the order.

The State charged Bueno with felony violation of a court order,[1] with an allegation that Bueno and Harris were members of the same family or household. The case proceeded to a jury trial.

Bueno moved to exclude the contents of the letter because it was hearsay, irrelevant, and unfairly prejudicial. The letter referenced an incident where Harris had Bueno arrested and Harris's possession of some of Bueno's property. It was addressed "Hola Mama" and signed "Papi," and included a phone number at the bottom. Ex., at 98, 101.

The court admitted the letter for "context that somehow helps prove the State's case," and because there were "certain identifiers or facts that are written about here that would somehow allow for the victim to—allow for the victim to say that she knows because of these facts that Mr. Bueno is the writer." 1 Report of Proceedings (RP) at 38. The court redacted certain prejudicial sections of the letter. It stated that the content of the letter was relevant "if the State can hinge actions, words, somehow to be able to identify that these phrases can be connected to Mr. Bueno." 1 RP at 45.

Several days after the trial began, Bueno renewed his motion to exclude the contents of the letter, again arguing it was hearsay. Bueno argued that the specific events referenced in the letter were offered for the truth of the matter asserted because they would only show Bueno had written the letter to the extent that those events actually happened. He claimed that, because the letter was only relevant if the events described in it were true, it was offered for the truth of the matter asserted and was inadmissible hearsay. The court denied the renewed motion, holding that specific events

---

[1] The State alleged that Bueno had at least two prior convictions for violating provisions of a court order, making this violation a Class C felony. RCW 26.50.110(5).

from the letter "would not be offered for the truth of [the] matter asserted, but for another purpose, i.e., identification." 4 RP at 387.

Harris believed Bueno authored the handwritten letter for numerous reasons. Bueno would often go by "Papi," the name by which she called him. The envelope the letter came in misspelled both her name and the street she lived on, consistent with the way Bueno often pronounced both words. In addition to the letter, the envelope contained a card with flowers and a hummingbird on it that Harris believed Bueno would have sent. During the marriage, Bueno would say "Olá Mamã [sic]" "almost on a daily basis" to Harris and "Mama" was one of the names he called her. 4 RP at 438.

Harris recognized Bueno's handwriting. She also recognized the phone number written in the letter as a number from which Bueno had called her during divorce proceedings. Harris said the tenor and attitude of the letter "sound[ed] exactly like him." 4 RP at 443. Harris could not think of anyone besides Bueno who might have sent the letter.

Harris also testified that several events referred to in the letter were consistent with her relationship with Bueno. She confirmed that Bueno had previously had contact with police because of her. She also stated that she had a black jacket and shoes that belonged to Bueno and a cell phone that he had used during their marriage, all items specifically referenced in the letter.

Harris knew that Bueno could read, write, and speak in both Spanish and English. They would communicate in English at home, and Bueno would communicate with her son, who did not speak any Spanish, in English.

Bueno testified that he did not write the letter. He said he could not have written the letter because he could not read or write in English. Bueno testified that, throughout his marriage to Harris, Harris had assisted him any time he needed to fill out forms or interact with English-speaking people.

Jordan Harris, Harris's son, testified in rebuttal that Bueno could write in English and he had seen him do so on multiple occasions. He recognized the letter as Bueno's handwriting.

The jury convicted Bueno of violating a court order and found that Bueno and Harris were members of the same family or household. Bueno appeals his conviction.

ANALYSIS

I.      HEARSAY

Bueno contends the letter was inadmissible hearsay because it was offered to prove the truth of the matters asserted in it, because it only showed he had written the letter if its contents were true. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is generally inadmissible unless it comes within an exception. ER 802.

We review whether or not a statement was hearsay de novo. *State v. Hudlow*, 182 Wn. App. 266, 281, 331 P.3d 90 (2014). We then review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). We may uphold a trial court's evidentiary ruling on the grounds the trial court used or on other proper grounds supported by the record. *Williams*, 137 Wn. App. at 743.

The State offered the letter to prove that Bueno violated the court's no-contact order by sending Harris the letter. The letter included statements that Harris had had Bueno arrested at the

4

Bremerton ferry terminal and that Harris had possession of Bueno's black coat and shoes. However, the State did not seek to prove that Bueno had been arrested at the Bremerton ferry terminal or whether Harris had possession of items belonging to Bueno. These events helped authenticate Bueno as the author of the letter.

Because the truth of the matters asserted in the letter was irrelevant except to prove the identity of the letter's author, the letter was not offered to prove the truth of the matters asserted. It did not meet the definition of hearsay and the trial court did not err by admitting it into evidence.

II.    SUFFICIENCY OF EVIDENCE

Bueno contends that the State failed to prove that he knowingly violated the no-contact order because it did not prove he wrote and sent the letter beyond a reasonable doubt. He claims that he could not have written the letter because he cannot read or write in English. Sufficient evidence supports Bueno's conviction.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In claiming insufficient evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

To convict Bueno of violation of a court order, the jury had to find beyond a reasonable doubt:

(1) That on or about March 30, 2017 there existed a no-contact order applicable to [Bueno];

5

(2) That [Bueno] knew of the existence of this order;
(3) That on or about said date, [Bueno] knowingly violated a provision of this order;
(4) That [Bueno] had twice been previously convicted for violating the provisions of a court order; and
(5) That the acts occurred in the State of Washington.

Clerk's Papers at 37; RCW 26.50.110(5). Bueno contends that the State failed to present sufficient evidence of the third element, that he violated the order. He claims the State failed to prove that he sent the letter Harris received.

The parties presented conflicting evidence regarding Bueno's capacity to write in English. Bueno testified that he could not write in English and Harris had helped him communicate in English throughout their marriage. However, Harris and her son both testified that Bueno could read, write, and speak in both Spanish and English. They further testified that they both recognized the letter as Bueno's handwriting. Harris provided extensive additional testimony indicating that Bueno had written the letter.

On matters of conflicting testimony and evaluating the persuasiveness of the evidence, we defer to the trier of fact. *State v. Fleming*, 155 Wn. App. 489, 506, 228 P.3d 804 (2010). Because conflicting testimony exists regarding Bueno's ability to write in English, we defer to the jury's determination. Bueno's challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. Because a rational trier of fact could have found the elements of the crime beyond a reasonable doubt, Bueno's argument fails.

## SAG ANALYSIS

I.     SUFFICIENCY OF EVIDENCE

Bueno contends that the State failed to prove the elements of the crime beyond a reasonable doubt, violating his due process rights.[2]  He alleges that sufficient evidence does not support his conviction because the letter and Harris's testimony were insufficient to prove he violated the no-contact order beyond a reasonable doubt.

Bueno makes the same argument in his brief.  Where a SAG contains alleged errors that "have been thoroughly addressed by counsel," they are "not proper matters for [the] statement of additional grounds under RAP 10.10(a)."  *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

II.    GOVERNMENTAL MISCONDUCT

Bueno alleges the State committed governmental misconduct by failing to follow "proper procedure" in the handling of the letter, that the card was "possibly already tampered with," and that the reporting officer did not call the number provided in the letter.  SAG at 5.

Bueno has not shown how accepting the letter from Harris or stating it had been handled in the mail constituted governmental misconduct.  Nor has he provided any legal grounds that would have required the police to call the number included in the letter.  We reject these arguments.

---

[2] A defendant's framing of his argument in constitutional terms does not change the standard of review.  *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013); *State v. Blair*, 3 Wn. App. 2d 343, 350, 415 P.3d 1232 (2018).

III.     ALLEGED PERJURY

Bueno contends that Harris perjured herself and his conviction must be overturned because it relies on false testimony.  He claims Harris's testimony was contradictory and that she intentionally lied.  Bueno alleges that the State's use of Harris's testimony violated his constitutional rights to equal protection and due process.  He further claims that the prosecutor committed misconduct by relying on perjured testimony.  We disagree.

"A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *State v. Larson*, 160 Wn. App. 577, 594, 249 P.3d 669 (2011).

Bueno contends that Harris's testimony that Bueno could speak English "very well, just as well as you and I," was inconsistent with her later testimony that he sometimes needed assistance understanding plain language and that he pronounced her first name "Mari" instead of "Mardi." SAG at 16.  Harris clarified that Bueno sometimes needed assistance with "medical terminology" at the doctor's office.  4 RP at 452.  Harris's statements do not expressly contradict one another and do not show that Harris perjured herself.

"To prevail on a prosecutorial misconduct claim, a petitioner 'must establish both improper conduct by the prosecutor and prejudicial effect.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 496, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 481-82, 965 P.2d 593 (1998)).  Bueno contends the prosecutor committed misconduct by knowingly relying on Harris's perjured testimony to sustain a conviction.  Because Bueno has not shown that Harris committed perjury, he has not shown any instance of prosecutorial misconduct.  We reject Bueno's argument.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, P.J.

We concur:

Sutton, J.

Glasgow, J.