# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | |
| Respondent, | No. 47559-6-II | |
| v. | | |
| KENNETH S. McMILLIAN, | UNPUBLISHED OPINION | |
| Appellant. | | |

SUTTON, J. — Kenneth S. McMillian appeals his convictions for second degree burglary, second degree possession of stolen property, and bribing a witness. We hold that (1) the State presented sufficient evidence to convict McMillian of second degree possession of stolen property and bribing a witness, but failed to present sufficient evidence to convict him of second degree burglary. We also hold that the trial court did not err by (2) denying McMillian's motion to suppress the seizure of his sport utility vehicle (SUV), (3) granting an overnight recess, (4) admitting testimony by a police officer about the alibi witness's warrant record retrieved from a police database, (5) instructing the jury on the missing alibi witness, and (6) not giving the jury a limiting instruction on McMillian's fiancé's theft conviction. As to McMillian's claims of prosecutorial misconduct, we hold that (7) even if some of the prosecutor's remarks were improper, McMillian fails to show any resulting prejudice. Thus, we affirm the convictions for second degree possession of stolen property and bribing a witness, but we reverse the conviction for second degree burglary and remand for resentencing with instructions to dismiss the second degree burglary conviction.

FACTS

I. BACKGROUND

In October 2013, Corporal William Reed of the Mason County Sheriff's Office responded to the scene of a reported burglary of a backyard shed. Upon arrival, Reed saw that the shed doors were open and a screen to a shed window was on the ground next to the shed. During Reed's site investigation, he found fresh, defined boot prints near the shed leading towards the road. Reed placed his own boot next to the boot prints and determined the burglar's boot size was approximately a men's 11, as the prints were longer than his own boots, which were size 10.5. Reed recognized the boot prints as having a Vibram sole.[1] As Reed followed the boot tracks along a trail that led to the paved road, he found a store receipt in the neighbor's driveway across the street with a nearby address on it. Reed did not find any fingerprints at the burglary scene.

As Reed drove to the address on the receipt, he mistakenly pulled into the driveway of a similarly numbered residence[2] when he saw a parked, black SUV. The SUV matched the description of the vehicle that the victim and the victim's neighbor saw parked across the street from the burglary scene. Reed looked into the windows of the SUV and saw items matching the description of the stolen property. When he received no response after knocking on the doors of the residence where the SUV was parked, Reed sealed the SUV, had it towed to the sheriff office's

---

[1] The burglary victim's shoe size is a men's 10.5, although sometimes he wears an 11. But he does not wear boots with a Vibram sole.

[2] The residence Reed arrived at is approximately 2.5 miles away from the burglary site.

impound yard, and locked it in the garage.  Reed obtained a search warrant and served it the next day.

Reed then conducted a search of the SUV.  He did not notice any evidence of forced entry into the SUV.  The doors were locked and the alarm was set.  None of the windows were broken.  The driver's window was down three inches which allowed the sheriff's evidence officer to reach into the open window and unlock the door.  After the officer opened the door, the alarm went off and Reed had to disconnect the battery to silence it.  The steering column cover was missing, but Reed did not investigate further to determine if the car had been stolen.[3]

The burglary victim confirmed that some of the items found during the search of the SUV were items that were stolen from his shed.  Other items—a window punch, gloves, police radio scanner, and bolt cutters—were also found inside the SUV, along with McMillian's mail and his out-of-service cell phone containing McMillian's personal contacts.

McMillian lived two miles away from where the SUV was found by Reed.  Five days after it was seized, McMillian reported the SUV stolen from his residence.  McMillian was the owner of the SUV and was in possession of its keys when he picked up the SUV from the sheriff office's impound yard two and a half weeks later.  Because Reed had disconnected the battery to turn the alarm off, McMillian had to reconnect the battery and then had trouble turning the alarm off using the key in the ignition.

McMillian was later arrested.  The State charged him with second degree burglary and second degree possession of stolen property.  Miguel Silva, a resident of the house where

---

[3] Reed testified inconsistently that he did and did not check whether the ignition had been "punched."  I Verbatim Report of Proceedings (VRP) at 127, 129-30, 154.

McMillian's SUV was found by Reed, told officers that when he arrived at the courthouse for the original trial date, McMillian saw him and offered him $500 if he would leave the courthouse. The State amended the information to add one count of bribing a witness.

## II. PROCEDURE

### A. PRETRIAL AND TRIAL TESTIMONY

In November 2013, McMillian filed a notice of appearance asserting two defenses, alibi and general denial. McMillian did not attach or later provide a list of alibi witnesses because he did not plan to call any witnesses to testify.

During trial, the burglary victim, the victim's neighbor, Reed, Silva, and the sheriff's evidence officer testified as to the above facts. Reed also testified that he had seen McMillian on one occasion, three months before the burglary, wearing boots with what appeared to be a Vibram sole.

Silva testified that he and a housemate lived at the residence where Reed found McMillian's SUV. Silva testified that he did not know who owned the SUV, but that it was not parked in his driveway when he left for work on the morning that it was towed. Silva had seen the SUV parked at his house on one prior occasion. Silva and McMillian had been coworkers several years prior. Silva also testified that McMillian had visited Silva's housemate at the house on one occasion after the SUV had been towed.

At the close of the State's case, McMillian moved to dismiss the charges of burglary and possession of stolen property, arguing the State had not produced sufficient evidence to go to the jury. The trial court denied McMillian's motion.

McMillian's fiancé testified that McMillian and Silva's housemate were friends. McMillian's fiancé also testified that McMillian wears a men's size 9.5 shoe. During the State's cross-examination of McMillian's fiancé, the following relevant questions and responses occurred:

Q: And who, to your knowledge, lives with Miguel Silva?

A: I'm not exactly sure.

Q: Do you remember telling the detective and myself on Friday that you were aware of who his roommate was?

A: At the time, Misty Byrd, yes.

. . . .

Q: At what point in time did the vehicle go missing?

A: It had been a week before I'd moved.

Q: A week before you moved?

A: Uh huh, before I was in the process, yes.

Q: And do you remember telling . . . Corporal Reed and myself, formerly detective, that you don't remember exactly when the defendant left?

A: No, I don't remember telling.

Q: You don't remember telling me that or you don't remember exactly when he left?

A: I don't remember exactly when he left, no.

Q: Do you know where he went when he left?

A: No, I do not.

. . . .

Q: Do you remember telling Corporal Reed and myself when we interviewed you on Friday that the defendant went to a particular house when he left for the week?

A: Yes. After he got back he told me.

II Verbatim Report of Proceedings (VRP) at 336, 338-39. McMillian objected to the prosecutor's last question, stating that the "prosecutor is essentially testifying." The trial court overruled the objection. II VRP at 338.

5

McMillian testified that he wears either a 9.5 or a 10 in a men's shoe. McMillian also testified that he was friends with Silva and his housemate and that he had been to Silva's house a few times before the date of the burglary, but denied being at Silva's house after the burglary date. McMillian also denied offering Silva a bribe. McMillian further testified that although he lived in the same housing development as the site of the burglary, he was staying at Frankie Marino's house in Tacoma during the week of the burglary. Finally, McMillian testified that Marino would not be testifying as to McMillian's alibi because Marino had a warrant out for his arrest.

A mechanic testified that, based on the photo of the steering column taken at the sheriff's impound yard, someone had tampered with the ignition of McMillian's SUV. McMillian testified that after picking up his SUV from the impound yard, the ignition cylinder was damaged and turned freely using "anything." II VRP at 346. The mechanic also testified that "[y]ou shouldn't be able to [turn the car on with the alarm sounding] in theory," although they had been able to at his shop, but "normally you shouldn't be able to." II VRP at 292. During cross-examination, the prosecutor asked the mechanic if he was on a first name basis with the defense attorney and whether he worked on his car on a regular basis. After the mechanic answered, "Yes" to each, the prosecutor moved on and asked questions about the mechanical components of McMillian's SUV. II VRP at 287.

During the defense investigator's cross-examination, the prosecutor asked if the investigator conducted investigations on behalf of defense attorneys and whether he had worked for McMillian's defense attorney before. The witness replied, "Yes" and "Many times." II VRP at 308. The prosecutor moved on and asked questions about fingerprinting evidence.

B.  TRIAL MOTIONS

After the State concluded McMillian's cross-examination, the State moved to recall

McMillian after a court recess.  The trial court denied the motion, stating,

> Well we'll end for the day.  And the Court will take any additional authority that
> you'd like to provide to the Court either this afternoon if you have that opportunity,
> or tomorrow morning.  I have to be in Thurston County to do two cases first thing
> in the morning, so I will not be able to get back here until probably 10:00.

II VRP at 390.  The State then asked the trial court to order McMillian to provide additional facts

about his alibi defense "so that [the State] can conduct an investigation and discover the

whereabouts, or existence, of this alibi witness."  II VRP at 390.  The trial court responded,

> Well, the issue is that they're not calling this person as a witness, is what I am
> understanding [defense counsel's] argument as.  And so if they are not calling a
> person as a witness, then I think we need to look at the missing witness instruction
> rather than anything further, unless you can locate the person.  Because at this point
> we know that Frankie is in the exclusive control of the defendant because he knows
> who he is, he knows exactly where he lives, he can go out and drive somebody to
> that place.  And he's just disclosing it now in the midst of trial.
>
> And so at this point the Court will at the end, entertain a missing witness
> instruction.  We are in recess until 10:00 a.m. tomorrow.

II VRP 390-91.  The trial court recessed around 3:30 p.m.

The next day, the State recalled Reed who testified that after a search of state and national

law enforcement criminal databases, a Francis Marino[4] of similar age resided in Pierce County,

but that he did not have a warrant out for his arrest.  Reed testified that the warrant database was

used by law enforcement to locate people and determine whether they have an outstanding warrant.

Reed testified that he had no personal knowledge of how the records were created, but that he used

---

[4] McMillian's counsel notified the State during a sidebar that Frankie's name was Francis.

the database on a regular basis to retrieve records on individuals while in the field. Reed stated

that he relied on the database to make arrests and that the records in the database were reliable

records kept in the ordinary course of business. McMillian objected based on hearsay and

improper foundation grounds. The court overruled the objections and allowed the testimony.

C. CLOSING ARGUMENTS

During closing argument, the prosecutor stated,

Corporal Reed testified that he had seen the defendant approximately three months prior to this burglary wearing a Vibram sole boot, approximately size 10. And he described to you, and we zoomed in on this photograph, to show you that Exhibit 4 shows what appears to be a Vibram sole boot in the approximate size of the shoe that the defendant is wearing.

I found it interesting that one of the Exhibits that had been admitted in the defense's case were the defendant's shoes. And interestingly it was tennis shoes, not boots. Also interesting is that they are two different sizes. One is a 9 1/2 and the other is a 10. You remember it was the defendant's father who testified he thought he was a 10 1/2. And it was Corporal Reed who testified that his shoe didn't fit into the – –[.]

III VRP at 481-82. McMillian objected, stating that the prosecutor mischaracterized the evidence,

and the trial court overruled his objection. The prosecutor continued to argue that the difference

in size between McMillian's shoe size and the boot print Reed found at the burglary scene

can be explained by the weather, that can be explained by the tread being a little bit bigger, that can be explained by people wearing a slightly different shoe size, perhaps a slightly different size when you're wearing boots. Obviously a boot is going to have a bigger tread.

III VRP at 482. McMillian objected on the same grounds and the trial court overruled the

objection.

The prosecutor argued that the mechanic testified that if the alarm was tripped on the SUV, "you wouldn't be able to start the vehicle normally . . . . So in other words, if someone stole the vehicle and . . . set off the alarm, they wouldn't be able to drive the vehicle away." III VRP at 507. McMillian objected, stating that the prosecutor mischaracterized the evidence, and the trial court overruled the objection. The prosecutor argued that McMillian was a convicted thief and that the jury could consider that in evaluating his credibility as a witness. The prosecutor asked the jury if McMillian's delays in reporting his vehicle stolen and in its retrieval are the "actions of someone who is a victim of a car thief." III VRP at 509. The prosecutor argued that, based on Reed's testimony, "[t]here's no evidence to indicate that [the] vehicle was stolen." III VRP at 511. McMillian did not object.

D. THE COURT'S INSTRUCTIONS AND THE VERDICT

The trial court instructed the jury to consider only testimony heard directly from witnesses and admitted exhibits. The trial court also instructed the jury that the attorneys' statements are not evidence and that the jurors were to disregard any remark or argument not supported by the evidence. Finally, the trial court gave the jury a limiting instruction regarding McMillian's prior theft conviction[5] and a missing witness instruction.

After deliberations, the jury returned guilty verdicts on all charges. McMillian appeals.

---

[5] The limiting instruction stated, "You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony, and for no other purpose." Clerk's Papers (CP) at 113 (Jury Instr. No. 5).

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

McMillian argues that the trial court erred by denying his motion to dismiss the burglary and possession of stolen property charges because the State failed to present sufficient evidence for a rational jury to convict him of either charge beyond a reasonable doubt.[6] Br. of Appellant at 27. He also argues that if the trial court had granted his motion to dismiss, the jury would likely not have convicted him on the bribery charge. Br. of Appellant at 37-38. We hold that the State presented sufficient evidence to convict McMillian of second degree possession of stolen property and bribing a witness beyond a reasonable doubt. We also hold that the State failed to present sufficient evidence for a rational jury to convict McMillian of second degree burglary beyond a reasonable doubt.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence carry equal weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact's

---

[6] We review this claim as a challenge to the sufficiency of the evidence. "In a criminal case, a defendant may challenge the sufficiency of the evidence (a) before trial, (b) at the end of the State's case in chief, (c) at the end of all the evidence, (d) after verdict, and (e) on appeal." *State v. Jackson,* 82 Wn. App. 594, 607-08, 918 P.2d 945 (1996) (footnotes omitted). McMillian cannot appeal a denial of his dismissal motion for failure to prove a prima facie case because the case proceeded to verdict.

resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A. BURGLARY

McMillian argues that the State failed to present sufficient evidence to convict him of second degree burglary beyond a reasonable doubt because the State failed to prove that he was at the scene of the burglary. Br. of Appellant at 38; Reply Br. of Appellant at 16. We agree that the evidence is insufficient to prove that McMillian entered or remained unlawfully in the shed.

To convict McMillian of second degree burglary, the State must prove beyond a reasonable doubt that McMillian entered or remained unlawfully in a building with the intent to commit a crime against a person or property therein. RCW 9A.52.030(1). Under RCW 9A.52.010(1), "enter"

> shall include the entrance of the person, or the insertion of any part of his or her body, or any instrument or weapon held in his or her hand and used or intended to be used to threaten or intimidate a person or to detach or remove property.

"In any prosecution for burglary, any person *who enters or remains unlawfully in a building* may be inferred to have acted with intent to commit a crime against a person or property therein." RCW 9A.52.040 (emphasis added). Here, the evidence shows that someone entered the shed and stole tools from the shed.

But there is no evidence that McMillian entered or remained unlawfully in the shed. At most, there was circumstantial evidence that McMillian was at the scene of the burglary outside of the shed and that the stolen property from the shed was found in his SUV. But even viewing the evidence and reasonable inferences from the evidence in the light most favorable to the State, we

hold that the State did not present sufficient evidence for a rational jury to convict McMillian of burglary beyond a reasonable doubt.

B.  POSSESSION OF STOLEN PROPERTY

McMillian also argues that the State failed to present sufficient evidence to convict him of possession of stolen property because there is no evidence that places McMillian with the stolen property and that ownership of a vehicle alone is insufficient to prove dominion and control.  Br. of Appellant at 27; Reply Br. of Appellant at 16.  We disagree because the State presented sufficient evidence to establish McMillian's dominion and control of the SUV.

"'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen."  RCW 9A.56.140(1).  To convict a person of possession of stolen property, the State is required to prove both (1) actual or constructive possession of the property that has been stolen and (2) actual or constructive knowledge that the property has been stolen.  *State v. Plank*, 46 Wn. App. 728, 731, 731 P.2d 1170 (1987).  Constructive possession in possession of stolen property cases has the same meaning as it has in controlled substance cases—that the person has dominion and control over the goods.  *Plank*, 46 Wn. App. at 731.  A person has constructive possession over an item that is not in his or her physical custody but is still within his or her "dominion and control."  *State v. Callahan,* 77 Wn.2d 27, 29, 459 P.2d 400 (1969).  "Ownership and actual control of a vehicle establishes dominion and control."  *State v. Turner,* 103 Wn. App. 515, 524, 13 P.3d 234 (2000).  A person's dominion and control over a vehicle allows the trier of fact to infer that the person also has dominion and control over items in the vehicle.  *Turner,* 103 Wn. App. at 524.

The evidence is uncontroverted that McMillian's SUV contained stolen property. It is true that ownership of the vehicle alone does not provide constructive possession of the stolen property inside the vehicle. Here, however, the totality of the circumstances shows that McMillian had dominion and control of his SUV. McMillian's SUV was locked, alarmed, and parked in his friend's driveway. There was no evidence of forced entry into the SUV. McMillian had the keys to the SUV. The SUV had McMillian's cell phone inside which, while not connected to a service provider, contained all of his contacts. Because the totality of the circumstances established that McMillian had dominion and control over his SUV, the jury was allowed to infer dominion and control of the stolen property found inside the SUV. Therefore, viewing the evidence and reasonable inferences from that evidence in the light most favorable to the State, we hold that the State presented sufficient evidence for a rational jury to convict McMillian of possession of stolen property beyond a reasonable doubt.

## C. BRIBING A WITNESS

McMillian argues that if the trial court had granted his motion to dismiss the charges of burglary and possession of stolen property, the jury would likely not have convicted him of the bribery charge. We disagree.

RCW 9A.72.090(1) states,

A person is guilty of bribing a witness if he or she offers, confers, or agrees to confer any benefit upon a witness or a person he or she has reason to believe is about to be called as a witness in any official proceeding or upon a person whom he or she has reason to believe may have information relevant to a criminal investigation.

We defer to the trier of fact for witness credibility. *See Camarillo*, 115 Wn.2d at 71. Here, Silva, a resident of the house where McMillian's SUV was found, told police that when he arrived

at the courthouse for the original trial date, McMillian saw him and offered him $500 if he would leave the courthouse. Viewing the evidence and reasonable inferences from that evidence in the light most favorable to the State, we hold that the State presented sufficient evidence for a rational jury to convict McMillian of bribing a witness beyond a reasonable doubt.

## II. WARRANTLESS SEIZURE

McMillian argues that the trial court erred by denying his motion to suppress evidence obtained from the SUV. Br. of Appellant at 41. He argues that (1) he had a privacy interest in his SUV and the police unlawfully impounded his vehicle without obtaining a warrant in violation of the Washington Constitution and (2) although *State v. Huff* [7] is controlling, we should overrule *Huff* because it is incorrect and harmful. McMillian argues that the reasonableness of a search is no longer part of the analysis under our state constitution, and the court's distinction between a possessory right and a privacy right in *Huff* is also invalid under the state constitution. We disagree. McMillian's SUV was lawfully impounded, and we decline to overrule *Huff* because McMillian has failed to show that *Huff* is legally incorrect and harmful as applied to this case.

We review de novo the trial court's conclusions of law. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). We will overrule precedent only when such precedent is both incorrect and harmful. *State v. Stalker*, 152 Wn. App. 805, 811, 219 P. 3d 722 (2009).

---

[7] *State v. Huff*, 64 Wn. App. 641, 826 P.2d 698 (1992). In *Huff,* we held that an officer who has probable cause to believe that a car contains evidence of a crime, may seize and hold a vehicle for a reasonable time to obtain a search warrant to conduct a subsequent search. 64 Wn. App. at 653.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a police officer generally cannot seize property without a warrant supported by probable cause. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Warrantless searches are presumed unreasonable subject to a few exceptions that are narrowly drawn. *State v. Tyler,* 177 Wn.2d 690, 698, 302 P.3d 165 (2013). The State has the burden of establishing by clear and convincing evidence that its search or seizure falls within an exception to the warrant requirement. *Tyler,* 177 Wn.2d at 698. One exception to the warrant requirement is a lawful impoundment. *Tyler,* 177 Wn.2d at 698.

A vehicle may be lawfully impounded when the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense. *Tyler*, 177 Wn.2d at 698. If there is no probable cause to seize the vehicle and a reasonable alternative to impoundment exists, then it is unreasonable to impound the vehicle. *Tyler*, 177 Wn.2d at 698.

Here, Reed looked into the windows of the SUV and saw items matching the description of the stolen property. When he received no response after knocking on the doors of the residence where the SUV was parked, he impounded the vehicle. He then obtained a search warrant the next day and searched the SUV. Because Reed ascertained that the SUV contained stolen property, he had probable cause to impound the SUV for a reasonable length of time to obtain a warrant. Under *Huff* and *Tyler,* Reed's impoundment of the SUV was lawful. The reasonableness of the officer's action is still part of the analysis under *Huff* and *Tyler.* McMillian fails to show that *Huff* is legally incorrect and harmful as applied here. Therefore, we hold that the trial court did not err in denying McMillian's suppression motion.

III.  ALIBI DEFENSE

A.  INFORMATION RELATED TO ALIBI DEFENSE

McMillian argues that the trial court violated his constitutional rights by ordering him to provide privileged facts underlying his alibi defense even though McMillian stated that he would not be calling Marino, the alibi witness.  Br. of Appellant at 6-7.  McMillian misconstrues the record, thus we disagree.

The trial court did not order McMillian to disclose any facts as to his alibi defense.  In direct response to the State's question as to whether the trial court would require "the defense to disclose any additional information" about the alibi witness, the trial court responded,

> Well, the issue is that they're not calling this person as a witness, is what I am understanding [defense counsel's] argument as.  And so if they are not calling a person as a witness, then I think we need to look at the missing witness instruction rather than anything further, unless you can locate the person.

II VRP 390.  The trial court also denied the State's motion to recall McMillian to the stand after the State concluded its cross-examination.  Thus, the trial court did not order McMillian to disclose any facts as to his alibi defense and McMillian's argument fails.

B.  RECESS

McMillian argues that the trial court erred by granting a "continuance" to allow the State to investigate McMillian's alibi defense.  Br. of Appellant at 7.  We disagree.  McMillian mis-characterizes the court's recess as a continuance and also mischaracterizes the reason the trial court ordered a recess.

We review the trial court's grant of a recess for an abuse of discretion. *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011). An abuse of discretion occurs when a decision is based on untenable grounds or reasons. *Bluehorse*, 159 Wn. App. at 435.

Here, after debate by counsel as to whether the trial court should order McMillian to disclose information on his alibi defense, the trial court recessed around 3:30 p.m. for the day to allow counsel time to provide the trial court with additional authority:

> Well we'll end for the day. And the Court will take any additional authority that you'd like to provide to the Court either this afternoon if you have that opportunity, or tomorrow morning.

II VRP at 390. The trial did not reconvene until the following morning at approximately 10:00 a.m. because the judge had another commitment earlier that morning. Because the trial court properly exercised its discretion to recess in the afternoon and reconvene as soon as possible the next morning, McMillian's argument fails.

C. HEARSAY EVIDENCE

McMillian argues that the trial court erred by admitting Reed's testimony to rebut McMillian's claim that Marino would not testify as his alibi witness because he had an outstanding warrant. Br. of Appellant at 7-8. He argues that Reed's testimony, that he did not find a warrant for Marino, lacked proper foundation and was hearsay. We disagree.

We review the admission of evidence under the business records exception for manifest abuse of discretion. *State v. Fleming*, 155 Wn. App. 489, 499, 228 P.3d 804 (2010). The absence of a public record has traditionally been admitted under ER 803(a)(10) as an exception to the rule against hearsay.

17

ER 803(a)(10) provides:

*Absence of Public Record or Entry*. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that a diligent search failed to disclose the record, report, statement, or data compilation, or entry.

"'The rule parallels the hearsay exception for a lack of a business record, [Rule 803(a)(7)].'" *State v. N.M.K.*, 129 Wn. App. 155, 162, 118 P.3d 368 (2005) (alteration in original) (quoting Karl B. Tegland, *Washington Practice:  Courtroom Handbook on Washington Evidence*, 409-10 (2005)).

The Uniform Business Records as Evidence Act (UBRA), chapter 5.45 RCW, provides that evidence which would otherwise constitute hearsay is competent testimony. *State v. Ziegler,* 114 Wn.2d 533, 537, 789 P.2d 79 (1990).  Under the UBRA, "business records are presumptively reliable if made in the regular course of business and there was no apparent motive to falsify." *Ziegler*, 114 Wn.2d at 538.  To ensure reliability, the record must "(1) be in record form, (2) be of an act, condition, or event, (3) be made in the regular course of business, (4) be made at or near the time of the act, condition or event, and (5) the court must be satisfied that the sources of information, method, and time of preparation justify" admission of the evidence. *Ziegler,* 114 Wn.2d at 538.

Here, Reed testified that as a law enforcement officer, he regularly uses both a national and state law enforcement criminal database.  He testified that the database was kept in the regular course of business, he relies on the database information, and he uses the records contained in the database to confirm warrants to make arrests.  Reed testified that a diligent search in both databases

for a warrant under the name of Francis Marino failed to produce any warrant. McMillian fails to show why the database was not inherently reliable or why Reed's testimony did not establish an adequate foundation. Reed's testimony falls squarely within the absence of a public record exception to hearsay under ER 803(a)(10). Therefore, we hold that the trial court did not err in admitting the testimony.

### IV. JURY INSTRUCTIONS

#### A. MISSING WITNESS INSTRUCTION

McMillian next argues that the trial court erred in giving the jury a missing witness instruction because he satisfactorily explained his alibi witness's absence; he was not required to subpoena the alibi witness; and he had the right to present a defense and to testify on his own behalf. Br. of Appellant at 15-16; Reply Br. of Appellant at 14. We disagree that there was error because the State met all five elements to be entitled to a missing witness instruction.

We review a trial court's jury instructions for an abuse of discretion. *Fleming*, 155 Wn. App. at 503. Jury instructions are proper when they allow the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

A criminal defendant has no duty to present evidence. *State v. Sundberg*, 185 Wn.2d 147, 153, 370 P.3d 1 (2016). An exception to this rule is when the defendant testifies about an exculpatory defense that could have been corroborated by an available witness, yet fails to call such witness. *Sundberg*, 185 Wn.2d at 153.

Under the missing witness doctrine, where a party fails to call a witness that is within the control of the party in whose interest it would be natural to produce that testimony, the jury may

draw an inference that the testimony would be unfavorable to that party. *State v. Blair,* 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991). The inference only arises if all five elements are met: (1) the testimony must be material and not cumulative, (2) the witness is particularly under the control of the defendant and not equally available to both parties, (3) the witness's absence is not "satisfactorily explained," (4) the witness must not be incompetent or his or her testimony privileged, and (5) the doctrine must not infringe on the defendant's constitutional rights. *Blair,* 117 Wn.2d at 489–91.

The question of witness availability does not mean that the witness is subject to the subpoena power. *Blair,* 117 Wn.2d at 490. "'For a witness to be available to one party . . . the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging.'" *Blair,* 117 Wn.2d at 490 (internal quotation marks omitted) (quoting *State v. Davis*, 73 Wn.2d 271, 277, 438 P.2d 185 (1968), *rev'd on other grounds* by *State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012)). The burden is on the party seeking the inference to prove that the witness was within the other party's power to produce. *Blair,* 117 Wn.2d at 491.

By testifying that he had an alibi witness, McMillan's alibi defense became material and an issue for the jury to consider. McMillian testified that he could locate his sole alibi witness but chose not to because the witness allegedly had a warrant out for his arrest. Because McMillan's alibi witness was material, and under his control, elements one and two of the *Blair* test are met.

Under element three—satisfactory explanation of the witness's absence—McMillian argues that a material witness subpoena would not have produced his alibi witness, citing *State v.*

20

*Carter,* 74 Wn. App. 320, 324, 875 P.2d 1 (1994). But the facts in *Carter* are not analogous. In *Carter*, the defendant tried to locate her alibi witness, seeking several continuances and a material witness warrant to do so. *Carter*, 74 Wn. App. at 323-24. The court in *Carter* reasoned that the defendant "tried to produce [the witness] for trial but was unsuccessful," so the missing witness doctrine did not apply because the witness's absence was satisfactorily explained. *Carter*, 74 Wn. App. at 332. Here, unlike the defendant in *Carter,* McMillian made no effort to produce his alibi witness. The State could not verify that a warrant had been issued for the alibi witness to explain why he did not testify at trial. Without a satisfactory explanation for the absence of the alibi witness at trial, element three of the *Blair* test is met.

Elements four and five are also met. As discussed above, the trial court did not order McMillian to provide any privileged facts regarding his alibi witness and McMillian was not denied an opportunity to present a defense. Because the State met all five elements of the *Blair* test, the State was entitled to a missing witness instruction. Therefore, we hold that trial court did not err in instructing the jury on missing witness.

B.  LIMITING INSTRUCTION FOR PRIOR THEFT CONVICTION

McMillian argues that the trial court erred by failing to give the jury a limiting instruction as to McMillian's fiancé's prior theft conviction. Br. of Appellant at 20. We disagree.

We review jury instructions for an abuse of discretion. *Fleming,* 155 Wn. App. at 503. If a defendant does not propose a limiting jury instruction, he waives any challenge to the court's failure to give an instruction. *State v. Russell*, 171 Wn.2d 118, 124, 249 P.3d 604 (2011). Here, McMillian failed to request a limiting instruction for his fiancé's prior theft conviction. Instead,

he only argued that the State should be limited in its ability to ask her about the prior theft convictions. Thus, we hold that he waived any objection and his argument fails.

## V. PROSECUTORIAL MISCONDUCT

McMillian argues that the prosecutor committed misconduct by (1) implying defense counsel was inducing witness perjury, (2) asserting personal knowledge of facts not in evidence during cross-examination of McMillian's fiancé, and (3) misrepresenting the evidence about shoe size, the car alarm, McMillian's delay in retrieving his SUV, and whether the SUV was stolen. Br. of Appellant at 21-27. Even if some of the prosecutor's statements were improper, McMillian fails to show any resulting prejudice. Thus, his arguments fail.

### A. LEGAL PRINCIPLES

To establish prosecutorial misconduct, a defendant must show that the prosecutor's remarks were improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). "Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Emery*, 174 Wn.2d at 760. If the defendant failed to object at trial, the defendant waives any error, unless the prosecutor's remarks were so flagrant and ill intentioned that no instruction could have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

We review a prosecutor's purportedly improper remarks during closing in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions to the jury. *State v. Pierce*, 169 Wn. App. 533, 552, 280 P.3d 1158 (2012). Counsel is not permitted to impart to the jury his own knowledge about an issue in the case under the guise of cross-examination when such information is not otherwise admitted as evidence. *State v. Lopez*, 95 Wn. App. 842, 855, 980 P.2d 224 (1999).

The prosecutor has wide latitude in closing argument to argue reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 453. "Closing argument provides an opportunity to draw the jury's attention to the evidence presented, but it does not give a prosecutor the right to present altered versions of admitted evidence to support the State's theory of the case." *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015), *cert. denied*, 135 S. Ct. 2844 (2015).

B.  REMARKS DURING CROSS-EXAMINATION

1.  Implying Defense Counsel was Inducing Witness Perjury

McMillian argues that the prosecutor committed misconduct during cross-examination by implying that two witnesses for the defense were lying because of a personal relationship they had with defense counsel. Br. of Appellant at 23. He also argues that these statements implied that defense counsel was suborning perjury by calling on witnesses to lie. Br. of Appellant at 23. We disagree.

During cross-examination, the prosecutor asked the mechanic if he was on a first-name basis with the defense attorney and whether he had regularly worked on the attorney's car. After the mechanic answered, "Yes" to each, the prosecutor moved on and asked questions about the mechanical components of McMillian's SUV. II VRP at 287. During cross-examination of the

defense's investigator, the prosecutor asked whether the investigator had conducted investigations on behalf of defense attorneys and whether he had previously worked for McMillian's defense attorney. The investigator responded, "Yes" and "Many times." II VRP at 308. The prosecutor moved on and asked questions about fingerprinting evidence. McMillian did not object to this line of cross-examination of either the mechanic or the investigator.

The prosecutor did not imply that the mechanic or the defense investigator were lying and did not argue as such. At most, the prosecutor was attempting to expose possible witness bias, which was not improper. We hold that the prosecutor's questions during cross-examination were properly directed to expose the witness's potential bias and were not improper.

2. Personal Knowledge of Facts Not in Evidence

McMillian next argues that the prosecutor committed misconduct by asserting personal knowledge of facts not in evidence during the State's cross-examination of McMillian's fiancé.[8] Br. of Appellant at 24. Even if it was improper for the prosecutor to insert reference to himself into the questions, we disagree that McMillian shows any resulting prejudice that had a substantial likelihood of affecting the jury's verdict.

During the State's cross-examination of McMillian's fiancé, the prosecutor asked the following questions:

> Q. Do you remember telling the detective and myself on Friday that you were aware of who his roommate was?
>
> A. At that time, Misty Byrd, yes.

---

[8] McMillian also argues that the prosecutor committed misconduct by disparaging defense counsel and defense counsel's role in a criminal trial citing *State v. Jones*, 144 Wn. App. 284, 290, 813 P. 3d 307 (2008). Br. of Appellant at 23. But the prosecutor did not disparage defense counsel or his role in a criminal trial.

. . . .

Q. And do you remember telling the detective ---sorry--- Corporal Reed and myself, formerly detective, that you don't remember exactly when the defendant left?

A. No, I don't remember telling.

Q. You don't remember telling me that or you don't remember exactly when he left?

A. I don't remember exactly when he left, no.

. . . .

Q. Do you remember telling Corporal Reed and myself when we interviewed you on Friday that the defendant went to a particular house when he left for the week?

A. Yes. After he got back he told me.

II VRP at 336, 338-39. McMillian objected to the prosecutor's last question, stating that the "prosecutor is essentially testifying" and the trial court overruled the objection. II VRP at 338.

Even if it was improper for the prosecutor to imply that he had personal knowledge, McMillian must show resulting prejudice that had a substantial likelihood of affecting the jury's verdict. Here, the information implied by the prosecutor was not material and the witness's answers were benign. We hold that because McMillian fails to show any resulting prejudice, his arguments fail.

C. REMARKS DURING CLOSING ARGUMENT

1. Improper Use of Prior Theft Conviction

McMillian alleges that the prosecutor's arguments in closing, that McMillian was a "convicted thief" and that his fiancé was a "convicted thief," were improper. Appellant's Br. at 19-20. McMillian did not object to either statement. We disagree that the prosecutor's argument that McMillian was a convicted thief was improper, but even if improper, the limiting instruction about McMillan's prior conviction cured any prejudice. As to the prosecutor's statement that

McMillian's fiancé was a "convicted thief," even if improper, any prejudice could have been cured by a limiting instruction which McMillian failed to request.

Here, the prosecutor's argument that McMillian was a convicted thief was not improper. Immediately following the "convicted thief" statement, the prosecutor properly informed the jury that they may use that information in "evaluating his credibility." III VRP at 508. Further, the trial court gave a limiting instruction on McMillian's prior theft conviction:

> You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony, and for no other purpose.

CP at 113 (Jury Instr. no. 5). We presume the jury follows the court's instructions. *See State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014). We hold that the prosecutor's remark was not improper. But even if it was improper, the limiting instruction cured any resulting prejudice. Thus, we hold that McMillian's argument fails.

As to the prosecutor's argument that McMillian's fiancé was a "convicted thief," even if the statement was improper, McMillian must show that the statement was so flagrant and ill intentioned that no instruction could have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760. But McMillian did not request a limiting instruction as to his fiancé's prior theft conviction, and he fails to show any resulting prejudice. Thus, we hold that his argument fails.

2. Misrepresentation of Evidence

McMillian argues that the prosecutor committed misconduct during closing argument by misrepresenting the evidence about shoe size, the car alarm, McMillian's delay in retrieving his SUV, and whether the SUV was stolen. Br. of Appellant at 21-23. McMillian objected to the arguments about shoe size and the car alarm evidence, but he did not object to the arguments about

his delay in retrieving his SUV or whether his SUV was stolen. We disagree that the prosecutor's remarks regarding shoe size, the car alarm, and retrieval of the SUV were improper. However, we agree that the prosecutor's argument about whether the SUV was stolen was improper. Even though the prosecutor's remark was improper, we hold that McMillian fails to show that the remark was so flagrant and ill intentioned that no jury instruction could have cured any resulting prejudice. Thus, his argument fails.

a. Shoe Size

The prosecutor argued that Reed saw McMillian wearing size 10 Vibram-soled boots three months before the burglary and that McMillian admitted he wore size 9.5 and size 10 boots. The prosecutor also argued that Reed testified that he placed his foot next to the boot print and estimated that the boot print at the scene of the crime came from a men's size 11 boot because it was larger than Reed's 10.5 boot. III VRP at 482. McMillian objected and the trial court overruled the objection. III VRP at 482. After arguing that McMillian wears 9.5 - 10 size men's shoes, the prosecutor then explained that the difference in size

> can be explained by the weather, that can be explained by the tread being a little bit bigger, that can be explained by people wearing a slightly different shoe size, perhaps a slightly different size when you're wearing boots. Obviously a boot is going to have a bigger tread.

III VRP at 482. McMillian objected again and the trial court again overruled the objection.

The prosecutor's arguments about McMillian's shoe size were reasonable inferences from the evidence. Moreover, because the prosecutor's remarks were reasonable inferences from the evidence, we hold that the remarks were not improper and thus, his argument fails.

27

### b. Car Alarm

The prosecutor argued that the mechanic testified that if the alarm was tripped on the SUV, "you wouldn't be able to start the vehicle normally . . . . So in other words, if someone stole the vehicle and . . . set off the alarm, they wouldn't be able to drive the vehicle away." III VRP at 507. McMillian objected and the trial court overruled the objection. III VRP at 507. The mechanic testified that "[y]ou shouldn't be able to [turn the car on with the alarm sounding] in theory," although they were able to turn the car on with the alarm sounding at his shop, "normally you shouldn't be able to." II VRP at 292.

The prosecutor's arguments about the car alarm were reasonable inferences from the evidence. Because the prosecutor's remarks were reasonable inferences from the evidence, we hold that the remarks were not improper and, thus, McMillian's argument fails.

### c. Car Retrieval

The prosecutor stated that McMillian did not report his SUV stolen until five days after the car was impounded, and did not retrieve his SUV for an additional two and a half weeks. The prosecutor concluded these remarks by asking the jury if these are the "actions of someone who is a victim of a car thief." III VRP at 509. McMillian did not object. Reed testified that McMillian reported his SUV stolen in early October, five days after it was impounded. McMillian testified he retrieved his SUV at the end of October.

The prosecutor is entitled to argue reasonable inferences from the evidence, which is what he did in closing when referring to McMillan's car retrieval. *Thorgerson*, 172 Wn.2d at 453. Because the prosecutor's remarks were reasonable inferences from the evidence, we hold that the remarks were not improper and, thus, McMillian's argument fails.

28

d.  Car Theft

The prosecutor argued that "[t]here's no evidence to indicate that the vehicle was stolen." III VRP at 511.  McMillian did not object.  III VRP at 511.

Reed testified that he did not notice any evidence of forced entry into the SUV, and he did not investigate further to determine if the car had been stolen.  The doors were locked and the alarm was set.  None of the windows were broken; but the driver's window was down three inches, allowing an officer to reach into the open window and unlock the door.  The steering column cover was missing.  Reed testified inconsistently that he did and did not check whether the ignition had been "punched."  I VRP at 127, 129-30, 154.

A mechanic testified that, based on the photo of the steering column taken at the sheriff's impound yard, someone had tampered with the ignition of McMillian's SUV.  The sheriff's evidence officer testified that when McMillian picked up his SUV from the impound yard, and after reconnecting the battery, he had trouble turning the alarm off using the key in the ignition.  McMillian also testified that the ignition cylinder was damaged and turned freely using "anything." II VRP at 346.

Here, the prosecutor misrepresented the evidence when he argued that there was *no* evidence that the SUV was stolen because there was evidence that McMillian's SUV could have been stolen. Thus, the prosecutor's remarks were improper.  But because McMillian did not object, he waives any error unless he can show that the prosecutor's remarks were so flagrant and ill intentioned that no instruction could have cured any resulting prejudice.  *Emery*, 174 Wn.2d at

760-61. The jury was instructed to only consider testimony heard directly from witnesses and admitted exhibits, that the attorneys' statements were not evidence, and to disregard any remark or argument not supported by the evidence. We presume the jury follows the court's instructions. *See Lamar*, 180 Wn.2d at 586. Even though the prosecutor misstated the evidence and his remark was improper, we hold that McMillian fails to show that the remark was so flagrant and ill intentioned that no jury instruction could have cured any resulting prejudice. Thus, his argument fails.

## CONCLUSION

We hold that (1) the State presented sufficient evidence to convict McMillian of second degree possession of stolen property and bribing a witness, but failed to present sufficient evidence to convict him of second degree burglary. We also hold that the trial court did not err by (2) denying McMillian's motion to suppress the seizure of his SUV, (3) granting an overnight recess, (4) allowing testimony about the alibi witness's warrant record retrieved from a police database, (5) instructing the jury on the missing alibi witness, and (6) not giving the jury a limiting instruction on McMillian's fiancé's theft conviction. As to McMillian's claims of prosecutorial misconduct, we hold that (7) even if some of the prosecutor's remarks were improper, McMillian fails to show any resulting prejudice. Thus, we affirm the convictions for second degree possession of stolen

No. 47559-6-II

property and bribing a witness, but we reverse the conviction for second degree burglary and remand for resentencing with instructions to dismiss the second degree burglary conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

JOHANSON, J.